882 A.2d 296

Christopher SWEET

v.

STATE of Maryland.

No. 2294, Sept. Term, 2003.

Court of Special Appeals of Maryland.

Sept. 6, 2005.

Bradford C. Peabody (Nancy S. Forster, Public Defender on the brief), Baltimore, for Appellant.

Diane E. Keller (J. Joseph Curran, Jr., Attorney General on the brief), Baltimore, for Appellee.

Panel: DAVIS, ADKINS, MEREDITH, JJ.

ADKINS, Judge.

Christopher Sweet, Appellant, has been twice convicted of sexually assaulting young girls. In this appeal from an order requiring Sweet to register as a sexually violent predator ("predator registration") pursuant to former Md.Code (1957, 2001 Repl.Vol.), Art. 27 section 792(a)(12),[1] we are asked to decide whether the State sufficiently proved that Sweet is "at risk of committing a subsequent sexually violent offense" by presenting statistical studies predicting Sweet's risk of recidivism to be in the "medium to low range." Sweet complains that the court erred in relying on two such assessments in determining that he is "at risk." We disagree.

## BACKGROUND

In *Sweet v. State*, 371 Md. 1, 806 A.2d 265 (2002), the Court of Appeals reversed Sweet's convictions for second degree assault and third degree sexual offense against a minor and remanded the case for a new trial. With respect to the sentencing court's order that Sweet must register as "a sexually violent predator," the Court of Appeals held that "the trial court erred in failing to find, on the record, the factual predicate necessary for finding that petitioner was a sexually violent predator as defined by the statute." *Id.* at 8, 806 A.2d 265. Vacating the judgment, the Court remanded for, *inter alia,* a new hearing on the issue of whether Sweet should be

---

1. The statutory provisions have since been recodified, and amended, in Subtitle 7 (Registration of Certain Offenders) of Title 11 (Victims and Witnesses) of the Criminal Procedure Article (CP).

ordered to register as a sexually violent predator or as a lesser degree of sexually violent offender.

After remand, Sweet pleaded guilty to a third degree sexual offense and was sentenced to a seven-year term of imprisonment. The State filed a memorandum in support of its request that Sweet be required to register as a sexually violent predator. That memorandum included the following information:

The defendant was convicted of Sexual Offense in the Third Degree in case number 81278. In that case, the defendant sexually molested a 6–year–old girl by climbing on top of her, simulating intercourse and ejaculating on her clothing. He told her they were playing "the slobber game." On May 28, 1998, the defendant was sentenced to ten years suspend all but one year plus special conditions during the five years of probation imposed. On November 14, 2000, the defendant was sentenced to nine years back-up for violating his probation.

The defendant violated his probation by committing another offense against another child. In that case, the defendant, a 40–plus–year–old man, sexually molested an eleven-year-old girl[2] by repeatedly rubbing his penis up against her buttocks and commenting on the size of her breasts while playing video games.

On December 5, 2003, a hearing was conducted on the State's registration request. Dr. Ronald Weiner, executive director of Clinical and Forensic Associates, which "does assessments and treatment for convicted sex offenders," testified at the hearing, explaining the results and reliability of three statistical risk assessment tests he consulted in evaluating Sweet's risk of re-offending. The defense stipulated that Weiner was an expert in the use of risk assessment evaluations.

---

**2.** The record indicates that the victim was only nine years old at the time of the crime.

Dr. Weiner explained that "offense risk assessment instruments" are "standard tools that are used in the sex offender assessment field[.]" They are "large-scale, meta analyses .... that have been done on convicted sex offenders nationally here in the United States and in Canada[.]" These "studies have come up with a series of factors ... identified as the factors that predict risk for re-offending." Although such studies are "not clinical" in that they do not reflect information obtained from the individual offender, Weiner stated that "they have the best validity. In other words, they're better than clinical judgment in predicting whether someone is likely to re-offend sexually and violently." Consequently, to evaluate risk of recidivism, "you don't need to have the individual present[,]" but "you do need to have a pre-sentence investigation report."

Weiner testified that, of the three risk assessment instruments he used,[3] "Static 99" had "the strongest empirical evidence of predicting risk for re-offense sexually and violently."

The Static 99 assessment for Sweet was admitted into evidence without objection. Sweet was assigned a score of three out of five, which Weiner explained in detail:

**What that means is that the individuals that scored a three,** that 12 percent of the individuals sexually recidivated **in five years,** and **22 percent of individuals scoring a three re-offended in a violent way.**

**Over a 10–year period of time,** 14 percent of individuals scoring a three sexually recidivated, and **27 percent who scored a three committed a violent offense.**

**Over a 15–year period of time, a person who scored a three,** 19 percent of them re-offended sexually and 34 **percent of them re-offended violently.** (Emphasis added.)

---

**3.** The court sustained a defense objection to a report based on the Vermont Assessment of Sex Offender Risk [VASOR] because, according to Dr. Weiner, "there is an issue of whether or not it rises to the level of predictability that the other instruments have."

Also admitted into evidence were results of the Rapid Risk Assessment of Sexual Offense Recidivism (RRASOR), which Dr. Weiner observed were "strikingly similar" to the Static 99 results, even though it "does not include ... predictions of sexual violence and violence in general, just sexual recidivism." The RRASOR results indicated that the risk that persons like Sweet, who received a score of two (out of a maximum five), will commit another sexual offense within a five-year period is 14.2% and the risk that the same person will commit another sexual offense within a ten-year period is 21.1%.

Asked by the court whether he was able to form an opinion as to whether Sweet is at risk for committing a subsequent sexually violent offense, Dr. Weiner replied: "I do have an opinion. The opinion is that based upon his score, there is evidence of risk for re-offense, both sexually and in terms of possible violence." That risk was in the "medium to low range."

The State argued that Sweet qualifies as a sexually violent repeat offender who should be ordered to register as a sexually violent predator for several reasons:

One is the commonsense argument that the defendant molested a little girl, a six-year-old girl. He was caught for doing that, he was prosecuted, he was convicted, and he was sentenced in that case. After he got out of jail in that case, he went again and molested another little girl.

The commonsense argument is that he did it once, he got caught, and he was even sent to jail, he got out of jail, and he went and did it again and he got caught. There is no reason to believe that he would not do it again.

Furthermore, the prosecutor emphasized, the statistical risk assessment made by Dr. Weiner supported that conclusion. Pointing to the scores explained by Dr. Weiner, she argued that Sweet "is at risk, in fact, of re-offending and to a significant degree, as is indicated in these risk assessment tools."

Defense counsel conceded that Sweet's molestations of both the six and the nine year old victims fall within the statutory

definition for sexually violent offenses.[4]　Asked by the court whether he was arguing that there was "no basis" for the court to find that Sweet was "at risk because of what [Weiner] said," defense counsel responded:

> No, ... I am not saying that at all. I am saying that clearly he is at risk. I don't think I could look you in the eye and say he is not at risk, because clearly he is at risk if for no other reason than the fact that he re-offended.

Counsel posited that, notwithstanding that Sweet's crimes are defined by the registration statute as "sexually violent," neither should be treated as "violent," given the lack of evidence that he used a weapon, threat, or other force. Based on that distinction and the "medium to low" risk predicted by the Static 99 and RRASOR studies, he vigorously disputed that Sweet could be characterized as "at risk for committing a subsequent *sexually violent* offense." (Emphasis added.) Defense counsel acknowledged that "there is [no] question" that Sweet is properly classified "as a sex offender" and that

> [h]e is at risk of violating probation or re-offending. That is—I mean, I can't argue that he is not at risk, because I can't predict the future and neither can the State.　He might not re-offend;　he might.
>
> What the statistics that they have presented to you say is he is at 14.2 percent by one study and 12 percent on another study.　.... I think there is a reason for the distinction [in the statutory classifications].　Not every sex offender is a sexually violent predator, and ... that is the point I am trying to make to Your Honor.

---

4.　" 'Sexually violent offender' means an individual who ... [h]as been convicted of a sexually violent offense[.]"　Md.Code (1957, 2001 Repl. Vol.), Art. 27 § 792(a)(10)(i), *recodified at* Md.Code (2001 & Cum.Supp. 2004), § 11–701(f)(1) of the Criminal Procedure Article (CP).　" 'Sexually violent offense' means ... [a] violation of ... § 464B ... of this article[.]"　Art. 27 § 792(a)(11)(i), *recodified at* CP § 11–701(g)(1). Because Sweet's first and second convictions were third degree sex offenses under Art. 27 section 464B, it is undisputed that he committed two predicate sexually violent offenses.

Yes, he is a sex offender, but no, he is not a sexually violent predator. (Emphasis added.)

Ultimately, defense counsel agreed with the court that the issue of whether the State proved that Sweet is a sexually violent predator turns on the meaning of "at risk" as that phrase is used in the registration statute. The debate then focused on what level of risk warrants such an at-risk finding.

THE COURT: The legislature didn't say "is likely to do this again." The legislature said "is at risk to do it again."

[DEFENSE COUNSEL]: Right. And I don't believe 14 percent or 12 percent is that level of risk necessary—

THE COURT: Okay.

[DEFENSE COUNSEL]:—that allows Your Honor to make that classification.

THE COURT: Is that the heart of your argument?

[DEFENSE COUNSEL]: Yes.

After considering the evidence and argument, the court granted the State's motion,

because ... it is clear that he has been convicted of a subsequent sexually violent offense.

So, the only arguable issue is whether or not I should conclude based on what is before me that he is at risk for committing a subsequent sexually violent offense.

For two reasons, I find that he is at risk: first, from the testimony of the witness, the expert witness, who said what he said; and second, from the fact that ... the common-sense argument has appealed to me.... [T]hose two factors cause me to conclude that there is a risk of him committing a subsequent sexually violent offense.

Sweet noted this timely appeal, which challenges only the order to register as a sexually violent predator.

## DISCUSSION

### Sexually Violent Predator Registration

When this case was initiated, the registration of sexual offenders was governed by section 792 of Article 27 of the

Maryland Code.[5] Orders to register as a sexual offender "are tailored to protect the public[.]" *Young v. State,* 370 Md. 686, 712, 806 A.2d 233 (2002). Such registration orders serve the "goal of alerting law enforcement officers and the community to the presence of sexual predators who may reoffend[,]" by requiring "registrants to supply basic information [that] apprise[s] law enforcement officials about an offender residing or working in the area." *Id.* at 712, 715, 806 A.2d 233.

Registration requirements apply to persons convicted of different degrees of sexual offenses. Relevant to this appeal is that there are distinct obligations for "child sexual offenders," "sexually violent offenders," and "sexually violent predators," although all are defined as "registrants" who must comply with the specific registration requirements applicable to them. *See* Art. 27 § 792(a)(7). For example, all registrants are required to register with their supervising authority, but sexually violent predators are also required to register with the Department of Public Safety and Correctional Services "every 90 days throughout the individual's life," whereas other registrants register only annually, for a period of from 10 years to life depending on the offenses. *See* Art. § 792(c)-(d).

It is the classification of an offender as a "sexually violent predator" that triggers heightened registration requirements. This classification is governed by section 792, which provides in pertinent part:

### § 792 Registration of sexual offenders.

(a) *Definitions.*—

    (1) In this section the following words have the meanings indicated....

    (12) **"Sexually violent predator" means an individual who:**

        (i) Is convicted of a second or subsequent sexually violent offense; and

---

5. Current CP section 11–701(h) uses substantively identical language to define a sexually violent predator.

(ii) **Has been determined in accordance with this section to be *at risk* of committing a subsequent sexually violent offense. . . .**

(b) *Determination; procedure.* . . .

(3) In making a determination [whether an individual is a sexually violent predator], the court shall consider:

(i) Any evidence that the court considers appropriate to the determination of whether the individual is a sexually violent predator, including the presentencing investigation and sexually violent offender's inmate record;

(ii) Any evidence introduced by the individual convicted; and

(iii) At the request of the State's Attorney, any evidence presented by a victim of the sexually violent offense. (Emphasis added.)

### Sweet's Challenge

Sweet argues that the State failed to prove the predicate facts for registration as a "sexually violent predator[.]" Specifically, he argues that

[t]here are a number of defects in the State's evidence at the hearing.

First, the assessment tools known as RRASOR and Static 99 both estimate the risk of re-offending as: low, medium or high. There is no such thing as "zero" risk. Therefore, if the legislature actually intended any "risk," whatsoever, to be enough, then all candidates automatically qualify for the status of "sexually violent predator," and the entire hearing procedure is a meaningless exercise in futility. Such a legislative intent cannot be presumed. *See* [*Sweet v. State*, 371 Md. 1, 806 A.2d 265 (2002) ].

Second, the State's expert readily conceded that two of the three "essential" components of "risk assessment" require: (a) "clinical interviews" with the defendant and (b) "a series of psychological tests." Neither of these two "essen-

tial" components was present, at all, in this case.... [T]he sole remaining "component" is merely based upon statistical probabilities, not on expert evaluation of this particular defendant's history or psychological profile.

Third, both of the statistical "assessment tools" used rated the risk of re-offending at less than "medium" and above "low." Only 14.2 percent of persons in that category re-offended within five years, according to the RRASOR assessment. The "Static 99" assessment estimated the risk even lower, at "12 percent" within five years; the risk rose to an insignificant degree, to only "14 percent" over ten years, under the same assessment tool.

Fourth, Dr. Weiner characterized Static 99 as "the instrument" that has the strongest empirical evidence of predicting risk for re-offense sexually and "violently." Yet, under Static 99, of the small minority of those with Sweet's score who re-offended, at all, only "22 percent" of that minority "re-offended in a *violent* way." ( [E]mphasis added). That is merely a small minority of a small minority.

There is nothing in the legislative history or in the Court of Appeals opinion in *Sweet* to suggest that this sort of hearing is intended to be an exercise in futility. Nothing as ambiguous as an estimate of "risk" can ever truly be characterized as "zero;" there is always some minority of a minority that will be at risk of re-offending, violently. Surely, any ambiguity in the statute should be resolved in favor of not imposing onerous, lifetime registration requirements and the severe stigma of not only having to register as a sex "offender" but as a sexually "violent predator," where the risk is so low.

### Statistical Evidence Of Risk

The statute requires the court to consider all evidence it finds "appropriate to the determination of whether the individual is a sexually violent predator," whether offered by the defendant, the State, or the victim. *See* Art. 27 § 792(3). These statistical risk assessments were properly considered in accordance with that statutory direction. Indeed, Sweet's

challenge does not appear to be directed at the "appropriateness" of the RRASOR and Static 99 assessment in terms of admissibility, but rather to the "appropriateness" of the weight given by the court to that evidence.

■ In one respect, Sweet's argument may be understood as a complaint that the statute does not define "at risk" or otherwise specify a qualifying level of risk to serve as the benchmark for the court to determine whether a particular defendant is at risk of committing another sexually violent crime. In the absence of a statutory definition of "at risk," we give that phrase its plain and ordinarily understood meaning. *See Rouse–Fairwood Ltd. P'ship v. Supervisor of Assessments of Prince George's County,* 120 Md.App. 667, 687–88, 708 A.2d 19 (1998). In doing so, we may consult the dictionary and we may consider whether the literal or usual meaning of the words is consistent with the context, objectives, and purpose of the statute. *See id.; Whack v. State,* 338 Md. 665, 672, 659 A.2d 1347 (1995); *Rouse–Fairwood Ltd. P'ship,* 120 Md.App. at 687–88, 708 A.2d 19.

■ "Risk" is commonly defined as "the possibility of suffering harm or loss," a "danger," or a "hazard." *The American Heritage Dictionary of the English Language* (4th ed.2000); *see also Random House Dictionary of the English Language* 1236 (unabr.1976)(risk means "exposure to the chance of injury or loss; a hazard or dangerous chance"). More specifically, to be "at risk" is to be "[i]n an endangered state[.]" *Am. Heritage Dictionary.* Applying this meaning in light of the overall registration scheme and its public safety purpose, we construe section 792 to mean that a defendant is "at risk of committing a subsequent sexually violent offense" when the court finds, based on the facts as shown by the preponderance of the evidence, that the defendant presents a level of danger that makes registration a reasonably prudent measure for the protection of the public.

We reject Sweet's suggestion that sexually violent predator registration cannot be ordered unless the court finds that the risk of the defendant committing a sexually violent offense in

the future exceeds a specified level. There is nothing in the language or history of the statute to suggest that the court must use a quantitative yardstick to measure such risk; nor do we discern any legislative intent to establish a minimum "qualifying" level of risk. To the contrary, the General Assembly's use of a generalized "at risk" standard indicates its intent to leave to the trial court the task of evaluating whether the evidence shows that the public threat of future sexual assaults by the defendant is serious enough to warrant imposing the heightened registration requirements of section 792. In practical terms, the salient question is whether the State met its burden of showing by a preponderance of the evidence that the public will be in "an endangered state" if the defendant is required to register only once every 365 days as opposed to every 90 days.[6]

We also reject Sweet's complaint that the sexually violent predator hearing is a meaningless exercise in futility because there is always some risk that a repeat offender will commit yet another sexually violent crime. This argument rises and falls on the incorrect premise that the existence of even the slightest risk that the defendant will commit another sexual offense necessarily requires the court to find that the defendant is "at risk of committing a subsequent sexually violent offense" for purposes of section 792. That is not the case.

■ To prevail on its request for predator registration, the State must persuade the circuit court that the danger of *sexually violent* recidivism is high enough in the defendant's case that the lesser registration requirements for other types of sexual offenders will not adequately protect the public. The hearing provides the defendant an opportunity to challenge the evidence and argument offered by the State. The court may find, based on a preponderance of all the evidence, that the risk of the defendant committing *any sexual offense*

---

6. Sweet is required to register throughout his life whether he is classified as a child sexual offender, a sexually violent offender, or a sexually violent predator, because he has been twice convicted of sexually violent crimes against children. *See* Art. 27 §§ 792(d)(2)-(5).

is not high enough to warrant predator registration, or, alternatively, that the demonstrated risk of the defendant committing *another violent sexual offense* has not been shown to be high enough to warrant such registration. In either case, the court's decision necessarily would be that the defendant is not "at risk of committing a subsequent sexually violent offense" within the meaning of section 792.

Indeed, that is precisely what counsel for Sweet urged the court to find. He argued that the "low to moderate" risk assessments under the RRASOR and Static 99 tests, and the "non-violent" nature of Sweet's offenses, did not support an at-risk finding for purposes of predator registration. The fact that the court did not weigh the evidence in the manner advocated by Sweet does not mean that the outcome of the hearing was a foregone conclusion.

■ Ultimately, then, we view Sweet's appeal as a sufficiency of the evidence challenge. We frequently have observed that "[i]t is not our role as an appellate court to re-evaluate or re-weigh the testimony and other evidence presented at trial and substitute our judgment for that of the trial court." *Deyesu v. Donhauser*, 156 Md.App. 124, 136, 846 A.2d 28, *cert. denied*, 382 Md. 685, 856 A.2d 721 (2004). Instead, we ask whether the evidence, "including all inferences that may permissibly be drawn therefrom, ... if believed and if given maximum weight, could logically establish" by a preponderance of the evidence that Sweet is "at risk of committing a subsequent sexually violent offense." *See generally Starke v. Starke*, 134 Md.App. 663, 678, 761 A.2d 355 (2000)(discussing sufficiency of the evidence challenges).

### Sufficiency Of The Evidence

■ We find evidence sufficient to support the court's at-risk determination. Significantly, the court did not rely solely on the statistical risk assessments, nor did it rely solely on Sweet's criminal record.

Instead, the court considered and credited Dr. Weiner's testimony that these assessments do not reflect personal

interviews with or evaluations of Sweet, and that the purely statistical analyses upon which the two assessments are premised predict the risk of "sexual re-offense" by Sweet as "medium to low[.]" Given these limitations, the court made it clear that it was viewing that evidence in light of the undisputed "common sense" evidence that Sweet "molested a ... six-year-old girl," "was caught for doing that," "convicted" and "sentenced" for that crime, and then, when "he got out of jail in that case, he went again and molested another little girl." The record shows that within a matter months after Sweet was released from prison for ejaculating on a six year old victim pinned beneath him while he simulated intercourse, he repeatedly pressed his erect penis against a nine year old girl in his care. The court emphasized that it was evaluating the quantitative risk data from the Static 99 and RRASOR assessments in light of these two assaults against young girls within such a short period, and giving significant weight to the fact that Sweet molested the second child while he was still on probation for molesting the first.

Collectively, the evidence is sufficient to support a finding that Sweet is already among the "minority of a minority" from whom he attempts to distinguish himself, in that he is undisputedly a member of the 22 percent who commit a subsequent sexually violent crime within five years of the prior crime. We hold that this evidence is sufficient to support the court's determination that Sweet is "at risk of committing a subsequent sexually violent offense."

**JUDGMENT AFFIRMED. COSTS TO BE PAID BY APPELLANT.**