884 A.2d 739

**James William JEANDELL**

v.

**STATE of Maryland.**

**No. 1491, Sept. Term, 2004.**

Court of Special Appeals of Maryland.

Oct. 6, 2005.

Katherine P. Rasin (Arthur A. Delano, Jr., Nancy S. Forster, Public Defender, on brief), for appellant.

Steven L. Holocomb (J. Joseph Curran, Jr., Atty. Gen., on brief), for appellee.

Panel JAMES R. EYLER, MEREDITH and WOODWARD, JJ.

MEREDITH, J.

James William Jeandell was convicted of rape in 1977. Upon his release from imprisonment, after serving twenty-six years of a forty year sentence, Jeandell was required to register with the State of Maryland's Sex Offender Registry pursuant to Md.Code (1957, 2001 Repl.Vol., 2004 Cum.Supp.), Criminal Procedure Art. ("C.P."), § 11–704. The registration statute further provided, in C.P. § 11–705(d), that Jeandell was required to send written notice to the Department of Public Safety and Correctional Services (the "Department") within seven days of any change in his residence.

In May of 2003, Jeandell became homeless. Jeandell failed to notify the Department in writing that he was no longer living at his registered address, and failed to otherwise inform the Department of his whereabouts. Consequently, Jeandell was charged and found guilty of violating C.P. § 11–721. A

time-served sentence was imposed by the Circuit Court for Montgomery County.

Jeandell appeals his conviction, arguing that, as a homeless person, because he did not have a new permanent residence to register with the Department, he was unable to comply with the statutory requirements. We conclude that the statute was properly applied, and that there was sufficient evidence for the trial court to find that Jeandell was in violation of the registration requirements. Accordingly, we shall affirm the judgment of the Circuit Court for Montgomery County.

## QUESTIONS PRESENTED

Jeandell raises the following questions on this appeal:

I. Whether the Maryland sex offender registration statute is unconstitutionally vague as applied to homeless persons.

II. Whether there was sufficient evidence to sustain Jeandell's conviction for failure to register a change of residence where Jeandell, as a homeless person, did not have a residence to register.

## BACKGROUND

Jeandell was convicted of rape in 1977, in the Circuit Court for Kent County, and was sentenced to a term of forty years. In October 2002, Jeandell was mandatorily released after having served twenty-six years. Upon his release, and pursuant to C.P. § 11–704(a), Jeandell registered as a sexually violent offender with the Maryland Division of Parole and Probation.[1]

---

1. Jeandell's registration was pursuant to the Maryland Registration of Offenders statute, which requires certain convicted defendants to register with their supervising authority as sex offenders. *See* C.P. § 11–701 *et seq. See also Cain v. State,* 386 Md. 320, 329–31, 872 A.2d 681 (2005)(Maryland statute requiring registration of sex offenders was enacted in response to federal statute known as the "Wetterling Act," often referred to as "Megan's Law"); *Sweet v. State,* 163 Md.App. 676, 882 A.2d 296 (2005)("there are distinct obligations for 'child sexual

Jeandell's registration statement included the information prescribed by C.P. § 11–706, which requires a registrant to provide the following:

(1) the registrant's full name, including any suffix, and address;

(2)(i) for a registrant under § 11–704(a)(7)(i) of this subtitle, the registrant's place of employment; or

(ii) for a registrant under § 11–704(a)(7)(ii) of this subtitle, the registrant's place of educational institution or school enrollment;

(3)(i) for a registrant enrolled, or expecting to enroll, in an institution of higher education in the State as a full-time or part-time student, the name and address of the institution of higher education; or

(ii) for a registrant who carries on employment, or expects to carry on employment, at an institution of higher education in the State, the name and address of the institution of higher education;

(4) a description of the crime for which the registrant was convicted;

(5) the date that the registrant was convicted;

(6) the jurisdiction in which the registrant was convicted;

(7) a list of any aliases that the registrant has used;

(8) the registrant's Social Security number;

(9) any other name by which the registrant has been legally known; and

(10) the registrant's signature and date signed.

Jeandell completed his registration with the Montgomery County Police Department (MCPD) on October 8, 2002.

Thereafter, Jeandell changed residences four times. Upon each change, Jeandell notified the Department by filling out a change of address card with the MCPD. Jeandell's last change

---

offenders,' 'sexually violent offenders,' and 'sexually violent predators,' although all are defined as 'registrants' who must comply with the specific registration requirements applicable to them").

of address notice was completed on April 2, 2003, when Jeandell notified the Department that he was living at 9704 Hastings Drive, Silver Spring, Maryland. After Jeandell gave the Department notice that he had changed his residence to 9704 Hastings Drive, the MCPD distributed flyers informing Jeandell's neighbors on Hastings Drive of his past conviction. Two of the neighbors then complained to Jeandell's landlady about Jeandell's presence in the building, and Jeandell's landlady asked Jeandell to vacate the premises.

On May 15, 2003, Jeandell showed up for his weekly meeting with his parole agent, John Haffer. In response to questioning by Agent Haffer, Jeandell disclosed that he needed to find a new place to live. Agent Haffer did not offer Jeandell any assistance in locating a new residence. Haffer simply told Jeandell to report back to him on May 22, 2003.

Jeandell reported, as directed, on May 22, 2003, and spoke with another field agent. Jeandell still did not have a new residence to report. He was told to report back in another week on May 29, 2003.

On or about May 23, 2003, Jeandell vacated 9704 Hastings Drive. He failed to make any further contact with the field agents. As a result, on June 3, 2003, Agent Haffer advised Detective Don Edmund, of the MCPD, that Jeandell had "absconded from supervision and was no longer living at his reported address."

Detective Edmund, who is in charge of maintaining the Montgomery County Sex Offender Registry, obtained an arrest warrant for Jeandell on June 20, 2003. The arrest warrant charged Jeandell with violating C.P. § 11–721 because Jeandell had failed to provide the Department with written notice of his change in residence as required by C.P. § 11–705(d).

A bench trial was held in the Circuit Court for Montgomery County, and Jeandell was found guilty of violating C.P. § 11–721. Because he had already been incarcerated for 85 days while awaiting his trial, the court imposed a time-served sentence. Jeandell filed this timely appeal.

### DISCUSSION

#### I.

The Maryland Registration of Offenders statute requires, in C.P. § 11–705(d), that "[a] registrant who changes residences shall send written notice of the change to the Department [of Public Safety and Corrections] within 7 days after the change occurs." The penalty for failing to notify the Department of any change in residence is set forth in C.P. § 11–721, which states:

(a) *Prohibited act.*—A registrant may not knowingly fail to register or knowingly fail to provide the written notice required under § 11–705(d), (e), or (f) of this subtitle, or knowingly provide false information of a material fact as required by this subtitle.

(b) *Penalty.*—A person who violates this section is guilty of a misdemeanor and on conviction is subject to imprisonment not exceeding 3 years or a fine not exceeding $5,000 or both. . . .

Jeandell argues that the charges filed against him should have been dismissed because, he contends, C.P. § 11–705(d) is unconstitutionally vague when applied to homeless registered sex offenders. Jeandell contends that his homeless status rendered him unable to comply with the statute's requirements because he did not have either a residence or a mailing address to register. Jeandell further asserts that the Maryland Registration of Offenders statute fails to define the term "residence," and fails to provide clear guidance to.homeless offenders on how to satisfy the statute's requirements. Jeandell urges us to find the statute void for vagueness.[2]

---

**2.** The State argues that Jeandell does not have standing to assert that C.P. § 11–705(d) and § 11–721 are void for vagueness when applied to homeless persons, because the State contends that the record lacks any evidence that Jeandell was in fact homeless. We disagree. The record indicates that when defense counsel announced her intent to call Jeandell to testify regarding his homeless status, the trial court stated that, based upon comments of counsel and the prosecution witnesses, the court was finding as a fact that Jeandell was homeless. There is no

In *Williams v. State*, 329 Md. 1, 616 A.2d 1275 (1992), the Court of Appeals discussed the void-for-vagueness doctrine, and noted that it "requires that a penal statute 'be sufficiently explicit to inform those who are subject to it what conduct on their part will render them liable to its penalties.'" *Id.* at 8, 616 A.2d 1275 (quoting *Connally v. General Const. Co.*, 269 U.S. 385, 391, 46 S.Ct. 126, 127, 70 L.Ed. 322 (1926)). Quoting from *Williams, supra*, and *Bowers v. State*, 283 Md. 115, 389 A.2d 341 (1978), the Court further elaborated upon the doctrine in *Galloway v. State*, 365 Md. 599, 615–16, 781 A.2d 851 (2001):

A well grounded principle in federal constitutional law is that, when considering the void-for-vagueness doctrine, courts consistently consider two criteria or rationales. *See, e.g., Williams*, 329 Md. at 8, 616 A.2d at 1278; *Eanes*, 318 Md. at 459, 569 A.2d at 615; *Bowers*, 283 Md. at 120–21, 389 A.2d at 345. The first rationale is the fair notice principle that "persons of ordinary intelligence and experience be afforded a reasonable opportunity to know what is prohibited, so that they may govern their behavior accordingly." *Williams*, 329 Md. at 8, 616 A.2d at 1278 (internal quotation marks omitted) (quoting *Bowers*, 283 Md. at 121, 389 A.2d 341); *see Ferro v. Lewis*, 348 Md. 593, 607, 705 A.2d 311, 318 (1998). The standard for determining whether a statute provides fair notice is "whether persons 'of common intelligence must necessarily guess at [the statute's] meaning.'" *Williams*, 329 Md. at 8, 616 A.2d at 1278 (alteration in original) (quoting *Broadrick v. Oklahoma*, 413 U.S. 601, 607, 93 S.Ct. 2908, 2913, 37 L.Ed.2d 830 (1973)). A statute is not vague under the fair notice principle if the meaning "of the words in controversy can be fairly ascertained by reference to judicial determinations, the common law, dictionaries, treatises or even the words themselves, *if* they possess a common and generally accepted meaning." *Bowers*, 283

---

indication in the record that the State objected to the court handling the issue in this manner. Accordingly, the trial court properly assumed that Jeandell was homeless, and so shall we.

Md. at 125, 389 A.2d at 348 (emphasis added) (citations omitted); *see Eanes,* 318 Md. at 460, 569 A.2d at 615–16.

The second criterion of the vagueness doctrine regards enforcement of the statute. This rationale exists "to ensure that criminal statutes provide 'legally fixed standards and adequate guidelines for police, judicial officers, triers of fact and others whose obligation it is to enforce, apply and administer the penal laws.'" *Williams,* 329 Md. at 8 9, 616 A.2d at 1278 (quoting *Bowers,* 283 Md. at 121, 389 A.2d 341). To survive analysis, a statute must "eschew arbitrary enforcement in addition to being intelligible to the reasonable person." *Williams,* 329 Md. at 9, 616 A.2d at 1279. In *Bowers,* we determined that, as to this standard, a statute is not unconstitutionally vague

> merely because it allows for the exercise of some discretion on the part of law enforcement and judicial officials. It is only where a statute is so broad as to be susceptible to irrational and selective patterns of enforcement that it will be held unconstitutional under this second arm of the vagueness principle.

283 Md. at 122, 389 A.2d at 346; *see Eanes,* 318 Md. at 464, 569 A.2d at 617.

As a general rule, the application of the void-for-vagueness doctrine is based on the application of the statute to the "facts at hand." *Bowers,* 283 Md. at 122, 389 A.2d at 346 (citations omitted).

## A. The Fair Notice Principle

■ Turning to the facts of the instant case, we conclude that neither C.P. § 11–705(d) nor C.P. § 11–721 is unconstitutionally vague. Applying the first criterion of the doctrine, the fair-notice principle, we conclude that "persons of ordinary intelligence and experience [are] afforded a reasonable opportunity to know what is prohibited" by § 11–705(d) and § 11–721. *Williams, supra,* 329 Md. at 8, 616 A.2d 1275.

Specifically, § 11–705(d) requires all registrants who change residences to send written notice of the change to the Depart-

ment within 7 days after the change occurs. Jeandell argues this statute is unconstitutionally vague because the term "residence" is not defined anywhere in the statutory scheme. Jeandell contends that a homeless person is someone who does not have a "residence," and therefore, cannot report a change in residence. We disagree.

As stated in *Galloway, supra,* 365 Md. at 615, 781 A.2d 851, "A statute is not vague under the fair notice principle if the meaning of the words in controversy can be fairly ascertained by reference to judicial determinations, the common law, dictionaries, or even the words themselves, if they possess a common and generally accepted meaning." In the absence of a statutory definition, we endeavor to construe the words used in a statute according to their common meanings, and seek to give the statute a reasonable interpretation in the context of the overall statutory scheme. *Johnson v. Mayor and City Council of Baltimore City,* 387 Md. 1, 11–12, 874 A.2d 439 (2005).

The term "residence" not only has a common and generally accepted meaning, it is also defined consistently in dictionaries. BLACK'S LAW DICTIONARY 1335 (8th ed.2004), for example, defines the term as follows:

1. The act or fact of living in a given place for some time.... 2. The place where one actually lives, as distinguished from a domicile.... *Residence* usu. just means bodily presence as an inhabitant in a given place; *domicile* usu. requires bodily presence plus an intention to make the place one's home....

THE MERRIAM-WEBSTER DICTIONARY 618 (New ed.2004) defines residence as:

1: the act or fact of residing in a place as a dweller or in discharge of a duty or an obligation[;] 2: the place where one actually lives[;] ...

Because the commonly accepted meaning of "residence" as that word is used in the context of C.P. § 11–705(d) is clearly "the place where one actually lives," the Maryland Registration of Offenders statute does provide adequate guidance on

how to comply with its requirements. Section 11–705(d) simply requires a registrant to provide written notice to the Department within seven days after there has been a change in the place where the registrant was living.

Even a homeless person lives *someplace.* In other words, even though a homeless person may not have a structural residence that the person permanently occupies, that person can still comply with § 11–705(d) by sending the Department written notice that the registrant no longer lives at the last noted residence of record, and by keeping the Department informed of the registrant's *whereabouts* each time that those whereabouts have changed. *Cf. Young v. State,* 370 Md. 686, 713, 806 A.2d 233 (2002)("The focus of [the registration requirement] is not on circumscribing the movement of offenders, but on keeping law enforcement and school officials informed of their *location.*") (emphasis added). The goal of the statute is to keep the Department apprised of the registrant's whereabouts. This goal is fostered by requiring the registrant to report any change in the place the registrant actually lives. Although it may, in some instances, be more complicated for a homeless person to describe the place or places that individual has been living, it is not impossible for such persons to comply with the requirement that the Department be notified of any change.

The record indicates that Jeandell had previously complied with the requirements of § 11–705(d). After Jeandell filed his initial registration with the MCPD, he subsequently filed four notices of change of address. Moreover, two of these notices indicated that his residence was a men's shelter, which might not generally be considered to be a permanent dwelling place, but would still qualify as a place of residence under the statute. Jeandell's history of compliance supports the trial judge's conclusion that Jeandell knew of the statute's requirement that he keep the Department informed of any change in his whereabouts.

Jeandell also argues that the term "residence" necessarily means the place where a person receives mail. We reject this

argument. Neither definition we cited would limit the term "residence" to only the location a person's mail is received.

We further conclude that C.P. § 11–721 provides fair notice of what behavior is prohibited. Section 11–721(a) clearly states that any registrant who knowingly fails to register, or to provide the written notice required under § 11–705(d), (e), or (f), or who knowingly provides false information of a material fact, is guilty of a misdemeanor. Section (b) further provides that the violator is subject to up to three years imprisonment or a fine not exceeding $5,000. Accordingly, we conclude that C.P. § 11–705(d) and § 11–721, when read together, provide reasonable notice of their requirements.

### B. The Enforcement Principle

[2, 3] Turning to the second criterion of the void-for-vagueness doctrine, the statute is required to "eschew arbitrary enforcement" and to provide "legally fixed standards and guidelines" for those whose obligation it is to enforce the statute. As the Court of Appeals made clear in *Galloway*, *supra*, 365 Md. at 616, 781 A.2d 851, however, "[i]t is only where a statute is so broad as to be susceptible to irrational and selective patterns of enforcement that it will be held unconstitutional under this second arm of the vagueness principle."

At Jeandell's trial, Detective Edmund and Paul Kozloski, the manager of Maryland's Sex Offender Registry, both testified that there have been prior cases in which registrants were homeless and did not have an address to report to the Department. Detective Edmund stated that, in those cases, the MCPD attempted to obtain housing for the individuals or directed them to shelters. The MCPD also "directed them to keep in contact ... as to their whereabouts so [the Department] can see where they are."

A similar approach was followed when Jeandell first informed Agent Haffer that he needed to look for another place to live. Agent Haffer instructed Jeandell to report to him the following week, and Jeandell complied. Jeandell was instruct-

ed to report back again the following week, but he failed to do so. It was not until Jeandell discontinued contact with the MCPD that Agent Haffer reported Jeandell to Detective Edmund as having "absconded from supervision," and being suspected of no longer living at his reported residence.

Jeandell cites two cases from other jurisdictions in which sex offender registration statutes were found not to apply to homeless persons. In *State v. Iverson,* 664 N.W.2d 346, 353 (Minn.2003), the Minnesota Supreme Court held that, because the state's sex offender registration statute did not provide guidance on how homeless offenders could comply with its requirements, the statute did not apply to certain homeless offenders. The court pointed out that the statute required registrants to provide the address of their new residence at least five days in advance, before the registrant started living there. The court also noted that each registrant would be mailed an address verification form every year that required registrants to report an address where mail can be received. The court concluded that homeless offenders who did not know where they would be living at least five days in advance, and who could not provide an address where mail could be received, could not comply with the statute. Consequently, the court declared the statute inapplicable to these offenders.

In *State v. Bassett,* 97 Wash.App. 737, 740, 987 P.2d 119, 120 (1999), the Court of Appeals of Washington held that the Washington sex offender registration statute, which required convicted sex offenders to register a change of address at least fourteen days before moving, did not apply to offenders who did not know where they would be moving fourteen days in advance. The court also held that "living on the streets" did not constitute a residence within the meaning of the statute.

Jeandell urges us to adopt the reasoning of these two cases, and conclude that Maryland's sex offender registration statute does not apply to homeless persons who cannot provide an address for their residence. We decline to do so, however, due to the differences in each state's respective offender registration statute.

Both the Minnesota and Washington statutes require registered offenders to give notice prior to the offender moving to a new residence. Maryland's statute, on the other hand, requires a registered offender to notify the Department of any change in the offender's residence at least seven days *after* the change has occurred. Accordingly, homeless registrants in Maryland are not required to know in advance where they will be moving. They simply need to notify the Department within seven days after any change has occurred. As noted previously, this is not an impossible requirement for homeless registrants to meet.

## II.

Jeandell's second argument to this Court is that the evidence was insufficient to sustain his conviction for a knowing failure to report a change in his residence, because, as a homeless person, he did not have a new residence to report. We disagree.

■ In reviewing the legal sufficiency of the evidence following a non-jury trial, "the reviewing court is not to 'ask itself whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt'; rather, the duty of the appellate court is only to determine 'whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.' " *State v. Albrecht,* 336 Md. 475, 479, 649 A.2d 336 (1994) (quoting *Jackson v. Virginia,* 443 U.S. 307, 318–19, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560, 573 (emphasis in original)).

■ The evidence presented at Jeandell's trial included testimony from his former landlady, Annette Miranda. She testified that, in April 2003, she had rented to Jeandell an apartment located at 9704 Hastings Drive. Miranda testified that Jeandell moved out of the residence and left his key with her in May 2003.

Agent Haffer also testified at Jeandell's trial. Agent Haffer stated that Jeandell came to his office on May 15, 2003, and told Agent Haffer that he needed to find another place to live. Agent Haffer instructed Jeandell to report back to him on May 22, 2003, which Jeandell did. Jeandell spoke with another agent that day, who told Jeandell to report back again the following week. Jeandell, however, failed to do so. As a result, Agent Haffer testified that, on June 4, 2003, he contacted Detective Edmund, and told Edmund that he believed Jeandell had "absconded from supervision and was no longer living at his reported address."

Detective Edmund testified that he verified that Jeandell was no longer living at 9704 Hastings Drive, and had vacated that residence on May 23, 2003. After confirming with the Department that Jeandell had not filed a written change of address notification, Detective Edmund applied for an arrest warrant. The arrest warrant was issued on June 20, 2003.

There was also testimony from Robert Landfare, an employee of the MCPD who works with the sex offender registry. Landfare testified that he registered Jeandell with the Maryland Sex Offender Registry upon his release from incarceration on October 8, 2002. Landfare stated that he read the registration form to Jeandell, and informed him of the registration requirements, including the paragraph that instructed Jeandell to report any change of residence to the Department within seven days. Landfare testified that Jeandell initialed each paragraph that had been read to him, and signed the form, swearing and affirming that he had been read the requirements, and that he understood that he must comply with them.

The manager of Maryland's Sex Offender Registry, Paul Kozloski, also testified at the trial. Kozloski testified that Jeandell had registered with the Department, and that his last known address was 9704 Hastings Drive. Kozloski stated that Jeandell had notified the Department on at least two prior occasions that his residence had changed.

Considering the evidence in a light most favorable to the prosecution, we conclude that the evidence was sufficient for a rational trier of fact to conclude that Jeandell knowingly failed to provide the Department with written notice of a change in his residence within seven days after the change had occurred on or about May 23, 2003. Although Jeandell argues he did not have a new residence to register, § 11–705(d) and § 11–721 required Jeandell to provide written notification to the Department that a change had occurred, regardless of whether he had settled into a new fixed place of residence. Moreover, because there was evidence that Jeandell had previously filed change of residence notices with the Department, there was sufficient evidence for the trial court to conclude that Jeandell was aware of the statutory requirements and that he knowingly failed to comply with them.

We note that the original registration form filled out by Jeandell on October 8, 2002, and read to him by Robert Landfare, does not specifically inform the registrant that *written* notification must be provided. That part of the form states:

Report any change of residence to the Department of Public Safety and Correctional Services (Crimes Against Children & Sexual Registry Unit) P.O. Box 5743, Pikesville, MD 21282–5743 within seven (7) days. . . .

Although the form directs the registrant to address the notice to a post office box, which implies that the notice will be a mailable document, we observe that the potential for misunderstanding might be reduced if the form specified that *written* notice must be provided. Nevertheless, the form instructs offenders that they can be penalized for failing to comply with the registration requirements, and both C.P. § 11–705(d) and § 11–721 state that written notice is required. Moreover, for the reasons stated previously, we are satisfied that Jeandell had actual knowledge of the requirement that he file a written change of address notice.

Accordingly, we conclude that Jeandell knowingly failed to provide the written notice required under C.P. § 11–705(d),

42

■■■■■■■■■
■■■■■■

and that there was, therefore, sufficient evidence to convict him of violating C.P. § 11–721.

**JUDGMENT AFFIRMED.**

**COSTS TO BE PAID BY APPELLANT.**