910 A.2d 1141

James JEANDELL

v.

STATE of Maryland.

No. 113, Sept. Term, 2005.

Court of Appeals of Maryland.

Nov. 15, 2006.

Katherine P. Rasin, Asst. Public Defender (Nancy S. Forster, Public Defender, Julia Doyle Bernhardt, Asst. Public Defender, on brief), for petitioner.

Steven L. Holcomb, Asst. Atty. Gen. (J. Joseph Curran, Jr., Atty. Gen., on brief), for respondent.

Argued before BELL, C.J., RAKER, WILNER, CATHELL, HARRELL, BATTAGLIA and GREENE, JJ.

RAKER, J.

James William Jeandell, petitioner, was convicted of rape in 1977, sentenced to a lengthy term of incarceration, and released in 2002. Pursuant to Md.Code (2001, 2005 Cum.Supp.), §§ 11–701(f) and 11–704 of the Criminal Procedure Article,[1] he was required upon his release to register with his supervising authority as a sexually violent offender, and pursuant to § 11–705(d), to send written notice to the Department of Public Safety and Correctional Services within seven days of any change in residences. He was convicted in the Circuit Court for Montgomery County of violating § 11–721(a) by knowingly failing to notify the State of his change in residences as required by § 11–705(d). The Court of Special Appeals affirmed, holding that even though he was "homeless," he knowingly failed to provide the written notice as required under § 11–705(d). *Jeandell v. State,* 165 Md.App. 26, 41–42, 884 A.2d 739, 748 (2005). We disagree and shall reverse.

The outcome in this case is dictated by our recent decision in *Twine v. State,* 395 Md. 539, 910 A.2d 1132 (2006), in which we held that the statute in its current iteration did not to apply to a person who is in fact homeless because it is not possible to comply with the statutory requirements. In *Twine,* we reversed a conviction under § 11–721(a) for the knowing failure to provide the written notice required by § 11–705(d). *Twine,* at 555, 910 A.2d 1141. Twine waived a jury and proceeded to trial before the court on a not guilty plea, agreed statement of facts, under which the parties stipulated that Twine was "homeless" and "was staying wherever he could." *Id.* at 543–45, 910 A.2d at 1134–35. Interpreting the sex offender statute, we held that a registrant has

---

1. All subsequent section references herein shall be to the Criminal Procedure Article, Md.Code (2001, 2005 Cum.Supp.), unless otherwise indicated. After briefing and oral argument in the instant case, the General Assembly enacted changes to the sex offender registration scheme. *See* 2006 1st Spec. Sess. Md. Laws, Chap. 4 (hereafter "Chap. 4"). Although Chap. 4 changed some of the sections of the statute implicated by the issue *sub judice,* none of these changes altered any portion of the statute essential to our holding today.

a "residence" within the meaning of § 11–705(d) only if the registrant "has a fixed location at which the registrant is living, and to which the registrant intends to return upon leaving it." *Id.* at 554, 910 A.2d at 1140. Applying this interpretation, we then held that the evidence was insufficient to support a finding of guilt, because the evidence was insufficient to support a finding that Twine "changed residences" within the meaning of § 11–705(d). *Id.* at 553–55, 910 A.2d at 1140–41. We concluded that because the record indicated that Twine was homeless and "staying wherever he could," he had not acquired a residence within the contemplation of the statute. *Id.* at 555, 910 A.2d at 1141.

Petitioner was tried in a bench trial in the Circuit Court for Montgomery County on the charge of knowingly failing to report a change in residences required by § 11–705(d) in violation of § 11–721(a). At the close of the State's evidence, petitioner moved for a judgment of acquittal, and to dismiss the charges. Petitioner's counsel argued that petitioner could not "comply with the statute as written" because he was homeless, and because the sex offender registration statute is unconstitutionally vague as applied to homeless defendants.[2]

The court denied the motion for a judgment of acquittal, and the following exchange took place between the court and petitioner's trial counsel:

"THE COURT: Well, looking at the evidence in the light most favorable to the State, which is the standard the Court must use, at this point, the Court will deny your motion and does the defense rest?

[DEFENSE COUNSEL]: Your Honor, I think for purposes of preserving the record, that in light of the statements that [the Assistant State's Attorney] said [suggesting that Jeandell may have acquired a residence and simply not reported it], I think that I would put Mr. Jeandell—

THE COURT: Well, you can do that if you want to, but I find the facts as they have been testified to, that Mr.

---

2. In light of our holding, we do not reach the issue of whether the statute is unconstitutionally vague as applied to homeless offenders.

Jeandell notified the authorities that he didn't have a place to go. And that what happened subsequently, a year after that notification was given, he still doesn't have a place to go, and he's arrested and subsequently prosecuted and he's here before the Court. That's on the record. I don't—and the State's argument is that he didn't notify them pursuant to the statute. *So, this is really more of a legal question than it is a factual question.*

[DEFENSE COUNSEL]: It is, Your Honor. But is Your Honor accepting that he did not, in fact, have a place to live? I mean, that—

THE COURT: That's the evidence. That's what's before this Court. The man was homeless.

[DEFENSE COUNSEL]: Okay. Then, Your Honor, I am not putting any additional evidence on. We would rest, as well.

I would renew my motion."

The trial court found as a fact that "the man was homeless." [3] The court stated that "I find the facts as they have been testified to, that Mr. Jeandell notified the authorities that he didn't have a place to go. And that what happened subsequently, a year after that notification was given, he still doesn't have a place to go ..." Because the Circuit Court found as a fact, and we are bound by that finding, that

---

**3.** The trial court apparently had a discussion off the record with counsel and the defendant, as evidenced by the following statement made by the court on the record after the luncheon recess:

"Well, obviously, because of the discussion that the Court had with the lawyers and with the defendant himself prior to the lunch break, this is an issue that the Court has been wrestling with because of the cumbersomeness of the statute and the reporting requirements that had to be made in this particular case."

Because the discussion was off the record, this Court is left in the dark as to what may have been said with respect to any facts bearing on petitioner's living condition and as to the basis for the finding of "homelessness." If the discussion played any part in the court's decision, the conversation should have been on the record. Moreover, if the trial court found, as it appears that it did, that Jeandell was in fact homeless and had no place to go, the court should have granted the motion for judgment of acquittal.

petitioner was "homeless" and that he "didn't have a place to go," he did not have a "residence" within the meaning of § 11–705(d). *See Twine,* at 553–55, 910 A.2d at 1140–41.

The Court of Special Appeals affirmed the judgment of the Circuit Court. *Jeandell v. State,* 165 Md.App. at 41–42, 884 A.2d at 748. We granted Jeandell's petition for writ of certiorari. *Jeandell v. State,* 390 Md. 500, 889 A.2d 418 (2006).

The Court of Special Appeals held that the evidence was sufficient to support petitioner's conviction, reasoning that "[a]lthough Jeandell argues he did not have a new residence to register, § 11–705(d) and § 11–721 required Jeandell to provide written notification to the Department that a change had occurred, regardless of whether he had settled into a new fixed place of residence." *Jeandell,* 165 Md.App. at 41, 884 A.2d at 747. This conclusion was based on the court's interpretation of "residence" as used in § 11–705(d) as meaning "the place where one actually lives." *Id.* at 35, 884 A.2d at 744. The court also concluded that because he had filed change of residence notices previously, there was sufficient evidence for the trial court to find that petitioner was aware of the statutory requirements and that he knowingly failed to comply with them. *Id.* at 41–42, 884 A.2d at 747–48.

We hold that the Court of Special Appeals erred in finding that the evidence was sufficient to support a conviction beyond a reasonable doubt because it applied an incorrect interpretation of "residence" as that term is used in § 11–705(d). The term "residence" connotes more than simply a "living location." *See Twine,* at 553–54, 910 A.2d at 1140. If "residence" were simply a "living location," as the Court of Special Appeals found, a homeless registrant might have to notify the Department of a change in residences at least every seven days, if not more frequently, with the prospect that the new residence listed in each notice may be out of date and therefore inaccurate.[4] Such a result is inconsistent with the framework of the statute.

---

**4.** The Department is required to take certain actions each time a registrant changes residences. *See* § 11–710(a)(1) (requiring notifica-

It is clear that the trial court concluded that petitioner was "homeless" and "didn't have a place to go." Consequently, following the reasoning and holding of *Twine,* no rational trier of fact could conclude that petitioner had a "residence" within the meaning of § 11–705(d). *See Twine,* at 555, 910 A.2d at 1141. Accordingly, the evidence was insufficient to support a finding of guilt because the evidence was insufficient to support a finding that petitioner "changed residences" within the meaning of § 11–705.

*JUDGMENT OF THE COURT OF SPECIAL APPEALS REVERSED. CASE REMANDED TO THAT COURT WITH INSTRUCTIONS TO REVERSE THE JUDGMENT OF THE CIRCUIT COURT FOR MONTGOMERY COUNTY. COSTS IN THIS COURT AND THE COURT OF SPECIAL APPEALS TO BE PAID BY MONTGOMERY COUNTY.*

---

tion of designated federal officials); § 11–710(a)(2)(i) (requiring notification of local state law officials); § 11–710(a)(2)(ii) (requiring notification of out of state law officials); § 11–710(b) (requiring notification of campus police). The statute imposes mandatory duties upon state law enforcement officials and county school systems each time they receive notice of certain registrants' residences. *See* § 11–709(b)(1) (requiring local law enforcement officials to notify county superintendents of a child sex offender's registration); § 11–709(b)(2) (requiring county superintendents to notify local principals of a child sex offender's registration). It would be impractical to require these actions to occur on a near daily basis. All duties related to a registrant's residence must be accomplished within five days of notice of a change in residences. *See* §§ 11–709 and 11–710. If a registrant moved on a daily basis, the information disseminated by the Department would always be stale.