LUCERO, Circuit Judge,
dissenting.
In the early morning hours of October 8, 2007, Kevin Murphy arranged for a ride from the Bonneville Halfway House in Salt Lake County, Utah, to his place of employ *805 ment. An officer drove Murphy to his workplace, but Murphy did not report to work. Instead, he boarded a bus for San Diego. The day after he left the halfway house, Murphy took a taxi from San Diego into Mexico. Two weeks later he settled in Belize.
These facts are not in dispute, but their legal implication is. Was Utah a “jurisdiction involved” under the Sex Offender Registration and Notification Act (“SORNA”) after Murphy abandoned the halfway house? SORNA lists three jurisdictions that qualify: the “jurisdiction where the offender resides, where the offender is an employee, and where the offender is a student,” 42 U.S.C. § 16913(a). This case concerns only the first prong — residence. And “resides” is a defined term referring to “the location of the individual’s home or other place where the individual habitually lives.” § 16911(13).
After absconding, Murphy was present in Utah for mere hours. He spent that time on a moving bus headed for the state line. In order to affirm Murphy’s conviction, the majority necessarily must accept an absurd premise: that a moving bus constitutes a “home or other place” in which Murphy “habitually live[d]” during the time it takes to travel from Salt Lake County to the state line — by my estimation, five hours or so. As a matter of statutory interpretation, and of common sense, such contortion is indefensible. I respectfully dissent.
I
SORNA requires a sex offender to keep his registration current “in each jurisdiction where the offender resides, where the offender is an employee, and where the offender is a student.” § 16913(a). Every time an offender experiences a “change of name, residence, employment, or student status,” he must “appear in person in at least 1 jurisdiction involved pursuant to subsection (a)” to notify that jurisdiction. § 16913(c).
Murphy’s move, however, reveals a wrinkle in SORNA. “Jurisdiction” is defined by statute to include states and certain territories and Indian reservations, but not foreign countries. See § 16911(10). When a sex offender moves from Utah to Colorado, it is simple enough for the offender to report his new address to Colorado. In that scenario, Colorado is the “jurisdiction where the offender resides,” § 16913(a), and thus a “jurisdiction involved pursuant to subsection (a),” § 16913(c). But Murphy moved from Utah to Belize, and Belize is statutorily excluded from the definition of “jurisdiction.” See § 16911(10). Accordingly, Murphy could not comply with SORNA by reporting his new address to Belizean authorities.
Nor did Murphy have an obligation to report to Utah. The majority concludes that Murphy ceased to reside at the Bonneville Halfway House when he left with no intention of returning. (See Majority Op. 11.) That conclusion is necessary to trigger Murphy’s reporting obligation, because it is the “change of ... residence” Murphy was required to report. § 16913(c). But if the halfway house was no longer Murphy’s residence, then Utah was no longer the “jurisdiction where the offender resides,” § 16913(a), because the state would not contain any “home or other place where [Murphy] habitually lives,” § 16911(13). Accordingly, Utah would not qualify as a “jurisdiction involved pursuant to subsection (a),” § 16913(c).
There was no point in time at which Murphy had a change in residence to report and continued to reside in Utah. Accordingly, Murphy cannot be convicted for *806 failing to update his registration with the State of Utah.
To escape this conclusion, the majority misinterprets the statute in two respects. First, it impermissibly rejects the statutory definition of “resides,” and instead applies the ordinary meaning of that term. In dealing with a defined term, “we should look to the statutory definition of the term and begin with the ordinary meaning of that language rather than with the ‘ordinary meaning’ of the term that Congress thought it advisable to define.” Hackwell v. United States, 491 F.3d 1229, 1240 (10th Cir.2007) (quotation omitted). The majority concludes that “the intentional abandonment of a home does not in itself change the ‘jurisdiction where the offender resides,’ so long as the offender was still a resident of the state when the abandonment occurred.” (Majority Op. 803.) But this assertion merely begs the question. If Utah does not contain a “home or other place where [Murphy] habitually lives,” § 16911(13), then why is Murphy a “resident” of Utah under the statutory definition? He certainly might qualify as a resident of the state as the word “resident” is normally used, but we must adhere to the definition provided by Congress: An offender resides at “the location of the individual’s home or other place where the individual habitually lives.” § 16911(13). Because Murphy did not have a habitual home in Utah after he abandoned the halfway house, Utah was not a jurisdiction involved under SORNA.
Second, the majority opinion avoids a plain text reading of the statute by giving two different meanings to the defined term “resides.” (See Majority Op. 801 n.l (“[S]ubsections (a) and (c) [of § 16913] discuss two separate concepts that are defined in the same way by the same term.”).) According to the majority, Murphy “changed his residence but not the jurisdiction where he resided.” (Id. at 804.) In other words, he continued to “reside” in Utah despite not having a habitual residence in that state, merely because he was present in Utah. The statute “permits a telescoping approach,” the majority tells us, under which the single defined term “resides” apparently might refer to a home or an entire state. (Id. at 801 n.2.)
“A core tenet of statutory construction is that identical words used in different parts of the same act are intended to have the same meaning.” Wyodak Res. Dev. Corp. v. United States, 637 F.3d 1127, 1131 (10th Cir.2011) (quotation omitted); see also Brown v. Gardner, 513 U.S. 115, 118, 115 S.Ct. 552, 130 L.Ed.2d 462 (1994) (“[T]here is a presumption that a given term is used to mean the same thing throughout a statute. ...” (citations omitted)). The majority explicitly violates this canon by giving-inconsistent definitions to “resides” and “residence.” Congress used the same root word to define the triggering of an offender’s reporting requirement — “change of ... residence,” § 16913(c) — and the jurisdiction to which an offender must report— “jurisdiction where the offender resides,” § 16913(a). Sauce for the goose is sauce for the gander. If Murphy’s reporting requirement arose because he experienced a “change of ... residence,” § 16913(c), when he left the Bonneville Halfway House, the majority cannot fairly claim in the same breath that Murphy continued to reside in the state of Utah. That is, unless the majority concludes that Murphy established a new habitual residence on the bus during his brief ride to the border — a risible interpretation of the facts before us.
Nor do the eases cited by the majority support its position. In United States v. Voice, 622 F.3d 870 (8th Cir.2010), the defendant absconded from a halfway house, and over the following two months *807 spent ten days living in a “a conventional dwelling with an address” and some period of time sleeping in an abandoned comfort station. Id. at 873-74. The defendant had been eating and showering at a trailer located across the street from the comfort station, and police found the defendant’s belongings located inside the abandoned building. Id. at 873. The Eighth Circuit held that this evidence permitted a jury to conclude that the defendant established a habitual residence after leaving the halfway house. Id. at 874-75. However, the court declined to reach the issue of “whether some travelers are so transient that a jury could not reasonably find a change of residence during extended travels.” Id. at 874.
In United States v. Van Buren, 599 F.3d 170 (2d Cir.2010), the defendant left his home in New York and traveled to his mother’s home in North Carolina where he stayed until he was arrested fifteen days after leaving New York. Id. at 171. The jury instructions referenced the defendant’s obligation to “notify the registry” and noted that updated information “must be provided to either the state where the sex offender resides, works, or is a student.” Id. at 173. Under that instruction, Murphy was not required to report to Utah because he did not reside in that state once a reporting obligation arose.
Finally, the venue cases cited by the majority merely stand for the proposition that the crime of failing to update a registry begins in the state from which a sex offender moves. See United States v. Howell, 552 F.3d 709, 717-18 (8th Cir.), cert. denied, — U.S. -, 129 S.Ct. 2812, 174 L.Ed.2d 306 (2009); United States v. Thompson, 595 F.Supp.2d 143, 148-150 (D.Me.2009); United States v. Cochran, 2008 WL 2185427, at *2-3 (E.D.Okla. May 23, 2008) (unpublished). This is so because the federal venue statute provides that when a crime is “begun in one district and completed in another, or committed in more than one district, [it] may be inquired of and prosecuted in any district in which such offense was begun, continued, or completed.” 18 U.S.C. § 3237.
II
Our duty as a court is to apply SORNA’s plain language and leave it to Congress to change the statute if it desires to do so. Prior to October 8, 2007, Murphy’s residence was the Bonneville Halfway House. Between Murphy’s desertion of the halfway house that morning and his entry into Mexico the following day, there was no “home or other place where [he] habitually live[d].” § 16911(13). Assuming Murphy’s abandonment of the halfway house was a change in residence, Murphy did not establish a new residence before leaving the country. A moving bus traveling from Salt Lake County to San Diego is not a “home or other place where [an] individual habitually lives,” § 16911(13), under any reasonable interpretation of that phrase. And because Murphy did not “reside” in Utah following his change in residence, Utah was not a “jurisdiction involved,” § 16913(c), to which Murphy was required to report. On this basis, I would reverse his conviction.
As a matter of policy, the majority’s version of SORNA might make perfect sense. But it is not the version that Congress created. I share the majority’s unspoken concern that Congress drafted SORNA with a loophole. But it is not our office to rewrite the statute to remedy Congress’ perceived failing. Our task is to apply the statute as written.
Murphy is a sex criminal who was placed on the sex offender registry because of a pair of unspeakably heinous crimes. But he is not appealing those convictions — for which he received poten *808 tial life sentences in state court. Instead, Murphy stands before us convicted for his failure to submit a form to the State of Utah. The plain text of the statute did not require him to file that form, and thus his conviction should be reversed.