**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

———————

**No. 10-5007**

———————

UNITED STATES OF AMERICA,

                Plaintiff - Appellee,

      v.

ROBERT BRUFFY,

                Defendant - Appellant.

———————

Appeal from the United States District Court for the Eastern District of Virginia, at Alexandria. Leonie M. Brinkema, District Judge. (1:10-cr-00077-LMB-1)

———————

Argued: December 6, 2011         Decided: February 16, 2012

———————

Before MOTZ, GREGORY, and KEENAN, Circuit Judges.

———————

Affirmed by unpublished opinion. Judge Keenan wrote the majority opinion, in which Judge Motz joined. Judge Gregory wrote an opinion concurring in part and dissenting in part.

———————

**ARGUED:** Shannon S. Quill, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Alexandria, Virginia, for Appellant. Jeffrey Zeeman, OFFICE OF THE UNITED STATES ATTORNEY, Alexandria, Virginia, for Appellee. **ON BRIEF:** Michael S. Nachmanoff, Federal Public Defender, Caroline S. Platt, Appellate Attorney, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Alexandria, Virginia, for Appellant. Neil H. MacBride, United States Attorney, Tracy Doherty-McCormick, Assistant United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Alexandria, Virginia, for Appellee.

———————

Unpublished opinions are not binding precedent in this circuit.

BARBARA MILANO KEENAN, Circuit Judge:

Robert John Bruffy was convicted in a bench trial of knowingly failing to register and update his registration as required by the Sex Offender Registration and Notification Act (SORNA), in violation of 18 U.S.C. § 2250(a). Bruffy challenges his conviction, arguing first that the reporting requirements of SORNA are unconstitutionally vague as applied to individuals such as himself who lack a fixed permanent address, and second, that the evidence was insufficient to support his conviction. Upon our review of the record and the requirements of SORNA, we affirm Bruffy's conviction.

I.

Bruffy was convicted in December 2000 of the felony of "sexual offense in the second degree" in Anne Arundel County, Maryland. As a result of his conviction, Bruffy was required under SORNA to register as a sex offender in the state in which he resided.

On May 7, 2008, Bruffy filed a Maryland Sexual Offender Information Change Form, indicating his intention to move from Maryland to Florida. The next week, upon arriving in Florida, Bruffy submitted to the Florida authorities a completed Florida Department of Law Enforcement Sexual Predator/Offender Registration Form (Florida form).

About eight months later, Bruffy made plans to move once again. On January 13, 2009, Bruffy filed another Florida sex offender registration form with the Florida authorities. On this form, Bruffy provided January 13, 2009, as his date of departure, and listed his "Current Permanent Address" as "Transient, Edge Water [sic], MD 21307," which is located in Anne Arundel County, Maryland.

Bruffy did not mark the box on the Florida form representing that he was leaving his Florida residence and had "no other permanent or temporary residence" as of his date of departure, nor did he check the box indicating that he had "no other permanent or temporary residence at this time." Bruffy did, however, mark the box on the Florida form indicating that he did not have a temporary address. This form filed on January 13, 2009 was the last sexual offender information form that Bruffy filed.

Before Bruffy left Florida, he had arranged to stay in the apartment of John Stec and Erica Liller (the Belle Haven apartment) in the Belle Haven area of Fairfax County, Virginia. Bruffy planned to rent his own apartment after securing employment. He sought work with a former employer in Maryland, and spoke generally about living in Maryland or living in Pennsylvania, where his son and sister lived.

4

From January 13, 2009 through February 5, 2009, Bruffy spent almost every night on a couch in the Belle Haven apartment. Although he also took showers and ate there, every day he removed his belongings from the Belle Haven apartment and stored them in his vehicle. Bruffy did not have a key to the apartment, but was required to contact either Stec or Liller each evening that he planned to stay there in order to gain entry. During this period, Bruffy spent a few nights at his uncle's residence in Charles County, Maryland.

On February 5, 2009, Bruffy committed misdemeanor sexual battery on Stec, after which Bruffy no longer slept in the Belle Haven apartment. From that date until February 15, 2009, Bruffy lived in his car, at various locations in the Belle Haven area of Fairfax County, in Washington, D.C., and in Maryland. On a number of these days, Bruffy parked his car in the parking lot of a church located behind the Belle Haven apartment. He returned to the Belle Haven apartment on a daily basis to take Liller back and forth to work. There is no evidence that Bruffy spent any time in Anne Arundel County, Maryland, during this period.

On February 15, 2009, Bruffy was arrested in Fairfax County, about 2.5 miles from the Belle Haven apartment. He later was indicted for failing to update his registration as a

5

sex offender, as required by SORNA, in violation of 18 U.S.C. § 2250(a).

Bruffy moved to dismiss the indictment in the district court. He argued that SORNA is unconstitutionally vague as applied to transients such as himself, because the language of SORNA does not clarify where such transients "reside" for purposes of compliance with the statute. The district court denied Bruffy's motion to dismiss, and the case proceeded to trial.

In a statement of stipulated facts, Bruffy acknowledged that he was aware of the registration requirements of SORNA, and that he had not submitted any updated registration information since leaving Florida on January 13, 2009. Based on these facts, the district court found Bruffy guilty of failing to register as a sex offender in Virginia and failing to update the information provided to Florida regarding his Virginia residency. Bruffy appeals from this conviction.

II.

Bruffy makes two arguments on appeal. First, he asserts that SORNA is unconstitutionally vague as applied to transient offenders such as himself. Second, Bruffy contends that the stipulated facts before the district court were insufficient to support his conviction. We address these arguments in turn.

6

A.

Bruffy argues that the definition of "resides" provided in SORNA is unconstitutionally vague as applied to transient offenders who have vacated one residence but have not yet established a new residence in a different state. He asserts that SORNA fails to provide fair notice of the point in time when presence in a new jurisdiction triggers the registration requirement. We review this vagueness argument, which presents a question of law, de novo. United States v. Brandon, 298 F.3d 307, 310 (4th Cir. 2002).

Bruffy was convicted under 18 U.S.C. § 2250(a) (the enforcement statute), which punishes violations of SORNA. That statute provides:

> In general. Whoever—
>
> (1) is required to register under the Sex Offender Registration and Notification Act;
>
> (2)
>
>    . . .
>
>    (B) travels in interstate or foreign commerce, or enters or leaves, or resides in, Indian country; and
>
> (3) knowingly fails to register or update a registration as required by the Sex Offender Registration and Notification Act;
>
> shall be fined under this title or imprisoned not more than 10 years, or both.

7

18 U.S.C. § 2250(a). Bruffy acknowledges that he is required by SORNA to register as an offender, and that he traveled in interstate commerce. Therefore, the only subsection at issue here is the provision addressing the updating of registration under SORNA.

The relevant sections of SORNA provide:

Registry requirements for sex offenders

(a) In general

A sex offender shall register, <u>and keep the registration current</u>, in each jurisdiction where the offender resides, where the offender is an employee, and where the offender is a student.

. . .

(c) Keeping the registration current

A sex offender shall, not later than 3 business days after each change of name, residence, employment, or student status, appear in person in at least 1 jurisdiction involved pursuant to subsection (a) of this section and inform that jurisdiction of all changes in the information required for that offender in the sex offender registry. That jurisdiction shall immediately provide that information to all other jurisdictions in which the offender is required to register.

42 U.S.C. § 16913 (emphasis added).

Under SORNA, "[t]he term 'resides' means, with respect to an individual, the location of the individual's home or other place where the individual habitually lives." 42 U.S.C. § 16911(13). Bruffy alleges that this definition of "resides"

8

renders SORNA impermissibly vague, because the definition does not provide fair warning directing transient offenders such as himself, who have left a permanent living situation but have not yet secured a new one, how to proceed.  We disagree with Bruffy's argument.

In order to address Bruffy's constitutional challenge, we must first classify it appropriately.  Although he focuses on the facts specific to his case, Bruffy also argues more broadly about the application of SORNA's registration requirements to transient offenders generally.  However, facial vagueness challenges to criminal statutes are allowed only when the statute implicates First Amendment rights.  United States v. Klecker, 348 F.3d 69, 71 (4th Cir. 2003) (citing United States v. Sun, 278 F.3d 302, 309 (4th Cir. 2002)).  Because Bruffy has not asserted that his First Amendment rights are affected by SORNA's registration requirements, we will consider only Bruffy's challenge to the statute as it applies to him.

When considering whether a penal statute violates the Due Process Clause of the Fifth Amendment on vagueness grounds, we consider both whether that statute provides notice to the public regarding the activity prohibited, and whether the statute operates in a manner that does not encourage arbitrary and discriminatory enforcement.  United States v. McLamb, 985 F.2d 1284, 1291 (4th Cir. 1993); see Skilling v. United States, 130

S. Ct. 2896, 2927-28 (2010). With respect to the issue of notice, a defendant must establish that the statute fails to give a person of ordinary intelligence a reasonable opportunity to understand the conduct that the statute prohibits. See United States v. Whorley, 550 F.3d 326, 333 (4th Cir. 2008).

1.

Although two of our sister circuits have addressed SORNA as it applies to defendants without fixed addresses, none has addressed the particular vagueness argument Bruffy raises challenging SORNA's term "resides." However, those decisions of our sister circuits nevertheless provide some useful context regarding SORNA and its registration requirements as applied to sex offenders with no fixed address.

In United States v. Voice, the Eighth Circuit addressed the issue whether a transient offender lacking a fixed address was required to update his information under SORNA, after he left a halfway house in one city in South Dakota and began living at various locations in another jurisdiction in the same state. 622 F.3d 870, 874-75 (8th Cir. 2010). The court held that SORNA does require that a transient offender update his information, and further stated that "[w]e reject the suggestion that a savvy sex offender can move to a different city and avoid having to update his SORNA registration by sleeping in a different shelter or other location every night." Id. at 875.

10

In support of its conclusion, the Eighth Circuit observed that while a convicted sex offender may lack a residence address, this fact does not prevent the offender from updating his registration information. See id. The court quoted from the Attorney General's SORNA Guidelines, stating:

> Such sex offenders cannot provide [a] residence address . . . because they have no definite 'address' at which they live. Nevertheless, some more or less specific description should normally be obtainable concerning the place or places where such a sex offender habitually lives—e.g., information about a certain part of a city that is the sex offender's habitual locale, a park or spot on the street (or a number of such places).

Id. (quoting National Guidelines for Sex Offender Registration and Notification, 73 Fed. Reg. 38,030, 38,055 (July 2, 2008)).

In another case addressing SORNA, United States v. Van Buren, 599 F.3d 170 (2d Cir. 2010), the Second Circuit discussed the importance of SORNA's registration requirements as they pertain to defendants with no fixed address. In that case, a convicted sex offender had left his residence in New York and was arrested at his mother's house in North Carolina about fifteen days later. Id. at 171-72. At no time during this fifteen day period did the defendant update his sex offender registration with New York or register in North Carolina. Id.

The Second Circuit rejected the defendant's argument that because he had not established a "new residence," he was not required to update his registration information under SORNA.

11

Id. at 174. The court stated that under SORNA, "it is clear that a registrant must update his registration information if he alters his residence such that it no longer conforms to the information that he earlier provided to the registry. Without accurate registration information, SORNA would be ineffective." Id. at 175.

The Second Circuit also explained that in enacting SORNA, Congress intended to establish a nationwide system requiring the registration of sex offenders, to ensure that "sex offenders could not avoid all registration requirements just by moving to another state." Id. (quoting United States v. Guzman, 591 F.3d 83, 91 (2d Cir. 2010)). Additionally, by requiring a sex offender to register within three business days of relocating his place of abode, Congress has enabled the authorities where the offender has relocated to ask pertinent questions about the offender's future plans. Id.

In the present case, Bruffy informed the jurisdiction he was departing that he intended to be transient in one state, but was found several weeks later in a different state where he had lived for an extended period of time without registering with the authorities. We conclude that the statute is not unconstitutionally vague as applied to the facts in Bruffy's case.

12

The plain language of the enforcement statute provides that whoever "knowingly fails to . . . update a registration as required by" SORNA is subject to prosecution. 18 U.S.C. § 2250(a)(3). Between January 13, 2009, and February 5, 2009, Bruffy lived in the Belle Haven apartment almost every day. Although he did not have unrestricted access to the Belle Haven apartment, and did not purport to settle there with any permanence, his tenure there was ongoing during that period.

Additionally, while Bruffy did not live in the Belle Haven apartment between February 5, 2009 and February 15, 2009, he returned there on a daily basis and occasionally lived in his car in a parking lot behind the apartment. Thus, while Bruffy may have been "transient" during the period between January 13, 2009 and February 15, 2009, Bruffy was not "in transit" during this time. That is to say, Bruffy was not merely passing through the Belle Haven area in uninterrupted travel, which would pose a question quite different than the one we face here.

For that month, Bruffy was transient in a defined jurisdiction. To the exclusion of any other location, Bruffy habitually lived in the Belle Haven area of Fairfax County, Virginia. Thus, regardless of the ultimate destination that Bruffy may have contemplated when leaving Florida, a transient person of ordinary intelligence would have recognized after four weeks of living in and around the Belle Haven area of Fairfax

13

County, Virginia, that he was habitually living there and was required by SORNA to update his registration information. Therefore, we conclude that the word "resides," as used in the language of SORNA's registration requirements, does not render the enforcement statute unconstitutionally vague when applied to Bruffy during the one month period at issue.

2.

We now consider Bruffy's argument that SORNA's use of the word "resides" is so vague that it will likely lead to arbitrary or discriminatory enforcement. Because Bruffy does not offer a substantive analysis in support of this contention, we cannot address his argument in great detail. However, our review of the language of SORNA in the context of the facts of this case satisfies us that arbitrary or discriminatory enforcement is not a meaningful concern.

The only persons subject to the enforcement statute are sex offenders required to register under SORNA. SORNA provides an offender three days following relocation to register. 42 U.S.C. § 16913(c). Given the narrow class of persons subject to the statute, the clearly defined timeframe before enforcement may commence, and the facts surrounding Bruffy's case, enforcement in this case was consistent with the "core concerns" underlying SORNA and did not lead to arbitrary or discriminatory enforcement. See Dickerson v. Napolitano, 604 F.3d 732, 749 (2d

14

Cir. 2010) (holding in "as applied" challenge that, even where enforcement guidelines may not have been clear in hypothetical situations, the actions of the defendants were in clear violation of the statute). Accordingly, we conclude that the language of SORNA provides sufficient guidance to withstand Bruffy's vagueness challenge.

B.

Bruffy next argues that the evidence presented was insufficient to support his conviction. He contends that the stipulated facts do not establish that he resided in Virginia, within the meaning of SORNA's registration requirements.

When examining the sufficiency of the evidence, an appellate court must affirm the district court's judgment if "<u>any</u> rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." <u>United States v. Poole</u>, 640 F.3d 114, 121 (4th Cir. 2011) (quoting <u>Jackson v. Virginia</u>, 443 U.S. 307, 319 (1979)). This standard is met when there is "substantial evidence" in the record, viewed in the light most favorable to the government, to support the district court's judgment. <u>Id.</u>

Bruffy asserts that he complied with SORNA by giving notice to Florida that he would be transient upon leaving Florida. He contends that this fact distinguishes him from the defendant in <u>Voice</u>, who failed to inform any authorities of his relocation.

15

622 F.3d at 873-74. He also argues that he complied with SORNA's requirements to the extent that he was able, and that he cannot be required to satisfy additional reporting obligations not contained in the statute. We disagree with Bruffy's arguments.

Although Bruffy is correct that his situation is not identical to that of the defendant in Voice, the similarities are nevertheless instructive. Like the defendant in Voice, Bruffy left the location where he last had registered, began habitually living in a new location, and did not provide the authorities in the jurisdiction in which he was arrested any notice that he was habitually living there. Voice, 622 F.3d at 874-75. Also like the defendant in Voice, Bruffy had not yet decided that the location in which he was arrested was the location where he intended to reside permanently. Id. Thus, under circumstances similar to those presented in this case, the Eighth Circuit held that there was sufficient evidence to find that a transient offender violated SORNA.

We reach the same conclusion here. We must affirm Bruffy's conviction if any rational fact finder, here a federal district judge, could have found that Bruffy violated the law. Certainly, it is possible that when Bruffy initially made plans to stay at the Belle Haven apartment, he harbored no intent to remain there, habitually or permanently. But, we cannot say

16

that a rational trier of fact could not conclude that Bruffy later developed the intent to remain in Belle Haven for some indefinite period of time such that he was required by SORNA to update his registration status. Indeed, the stipulated facts demonstrate that the day after his arrest in this case, Bruffy himself expressed an interest in moving into a newly vacant room in the Belle Haven apartment. That fact, in combination with the facts that Bruffy spent most nights and some portion of nearly every day in or around Belle Haven between January 13 and February 15, 2009, constitute sufficient evidence for us to affirm Bruffy's conviction.

In effect, Bruffy's argument would reduce to a nullity the statutory obligation of a transient offender to update his SORNA registration. The act of labeling oneself as a transient upon departing a particular state does not provide an offender a license to relocate to an unspecified location. Contrary to the form that he had filed with the Florida authorities, Bruffy was not transient in Edgewater, Maryland, nor had he ever been by the time he was arrested on February 15, 2009. Thus, Bruffy was required to update his registration information, because his residence no longer conformed to the information he earlier had provided to the SORNA registry. See Van Buren, 599 F.3d at 175. Instead, in violation of this registration updating requirement, Bruffy had terminated his Florida residence and had not provided

17

accurate information regarding his whereabouts for an entire month, effectively evading the requirements of SORNA. Therefore, we conclude that the evidence was sufficient to support Bruffy's conviction under the enforcement statute.

## III.

For these reasons, we affirm the district court's judgment.

AFFIRMED

GREGORY, Circuit Judge, concurring in part and dissenting in part:

While I agree with the majority that SORNA is not unconstitutionally vague as applied to Bruffy,[*] I would hold that

_____

[*] Unlike the majority, I do not believe that we must find that Bruffy habitually lived in the Belle Haven region of Alexandria, Virginia, to find that the statute is not unconstitutionally vague as applied to Bruffy.

To be constitutional, "a penal statute [must] define the criminal offense [1] with sufficient definiteness that ordinary people can understand what conduct is prohibited and [2] in a manner that does not encourage arbitrary and discriminatory enforcement." Skilling v. United States, 130 S. Ct. 2896, 2927–28 (2010) (quoting Kolender v. Lawson, 461 U.S. 352, 357 (1982), alterations in Skilling); see also City of Chicago v. Morales, 527 U.S. 41 (1991) (finding a loitering ordinance unconstitutionally vague because it "fails to give the ordinary citizen adequate notice of what is forbidden and what is permitted").

There are objective criteria that an ordinary person would understand to be indicators of whether she "habitually lives" in a particular location. Some indicators include whether that person is currently owning or renting a living space, where the defendant keeps her possessions, where she intends to return to each night, and so forth. That there is a disagreement here as to whether the government has met its burden in proving that Bruffy habitually lived in Belle Haven, Alexandria, Virginia, is beside the point. What's relevant is that there are easily understandable criteria that an ordinary person could utilize to assess her behavior under the statute.

Nor does the statute encourage arbitrary or discriminatory enforcement. The difference with Morales is informative. Morales held that a loitering statute was unconstitutional because police officers had to determine whether someone was standing on a street with no "apparent purpose" and such a term lacked objective indicia to guide enforcement. 527 U.S. at 56–59. When determining whether someone "resides" at a particular location, again, a series of objective factors can be taken into consideration, as recounted above. The inquiry is certainly less subjective than determining the difference between a
(Continued)

the government has not met its burden of proof in this case, and I would vacate Bruffy's conviction.

I.

SORNA states that whoever "knowingly fails to . . . update a registration as required by" SORNA is subject to prosecution. 18 U.S.C. § 2250(a)(3). SORNA requires that an offender update his registration in those jurisdictions "where the offender resides, where the offender is an employee, and where the offender is a student." 42 U.S.C. § 16913(c). No contention is made that the latter two categories are at issue. Unlike the majority, however, I would hold that Bruffy did not "reside" in Virginia for purposes of SORNA as a matter of law.

The disagreement boils down to an interpretation of "resides," which the statute defines as "the location of the individual's home or other place where the individual habitually lives." Id. § 16911(13). Although Bruffy was certainly living in the northern Virginia, D.C. metropolitan, and southern Maryland region for the disputed time period, Bruffy did not "habitually live" in any one of these areas. His duty to update his SORNA registration was therefore never triggered, and there

person's residence and domicile -- a longstanding distinction in our jurisprudence.

20

cannot be sufficient evidence to convict him of a SORNA violation.

There is no suggestion that Bruffy did not comply with the updating provision when he left Florida. Because he was no longer going to habitually live in Florida, he was required to notify the jurisdiction he was leaving within three business days. 42 U.S.C. § 16913(c). Bruffy complied with that requirement by noting that he would be transient in the Edgewater, Maryland region, which is where he intended to move. But because he did not have a permanent address -- a new place where he would habitually live -- Bruffy wrote that he would be "transient." The majority doesn't say that he violated SORNA when he left Florida; instead, the violation supposedly came after he had spent some nights in Alexandria.

Furthermore, even though Bruffy had no residence, according to the majority he was supposed to appear in person at a jurisdiction involved and update his registration. The statute tells us that even "jurisdiction" is defined with reference to "where the offender resides, where the offender is an employee, and where the offender is a student." Id. § 16913(a), (c). Again, under the statute we cannot even say that Bruffy could have reported to a Virginia jurisdiction without first establishing that Bruffy in fact habitually lived in Virginia.

21

Even though I would find that the definition of "habitually lives" is not so vague as to be unconstitutional, the definition is not pellucid. The Department of Justice ("DOJ") has issued guidelines to assist jurisdictions in understanding and implementing SORNA. The guidelines define "habitually lives" as "any place in which the sex offender lives for at least 30 days." National Guidelines for Sex Offender Registration and Notification, 73 Fed. Reg. 38,030, 38,062 (July 2, 2008). The guidelines admit that "[d]efining changes in such matters as residence and employment may present special difficulties in relation to sex offenders who lack fixed residence or employment." Id. at 38,065. The guidelines also state that jurisdictions are not required to treat as a change in residence every time that a sex offender sleeps on a different park bench, and the guidelines specify that a transient offender can comply with the statute by providing a description of the area in which she habitually lives. Id. at 38,030, 38,055, 38,065. While we are not bound by the DOJ guidelines, I would find their 30-day benchmark persuasive given that the meaning of "habitually lives" is ambiguous and subject to interpretation. See Christensen v. Harris Cnty., 529 U.S. 576, 587 (2000) (deferring to agency guidelines inasmuch as they are persuasive).

Whatever "habitually lives" may mean, it is clear to me that from February 5, 2009, to February 15, 2009, when Bruffy

22

lived in his car, he had no fixed address, and he did not habitually live anywhere. According to the jointly stipulated facts, in that time period, Bruffy "slept and lived in his car at various locations in Northern Virginia (Belle Haven region), Washington D.C., and Maryland." J.A. 100. Likewise, from January 13, 2009, to February 5, 2009, while Bruffy spent "almost every night" at the apartment, there were nonetheless "approximately a few" nights where he did not; he "stayed for approximately a few days at his uncle's residence in Waldorf, Charles County, Maryland." J.A. 100. Bruffy's 23-day, non-continuous, stay at the Belle Haven apartment does not meet the 30-day standard recounted in the DOJ guidelines.

Under the DOJ guidelines, the 30-day benchmark for "habitually lives" "does not mean that the registration of a sex offender who enters a jurisdiction to reside may be delayed until after he has lived in the jurisdiction for 30 days." National Guidelines for Sex Offender Registration and Notification, 73 Fed. Reg. at 38,062. In other words, a 30-day stay is sufficient, but not necessary to constitute "habitually living." Earlier registration is required when "a sex offender . . . enters a jurisdiction in order to make his home or habitually live in the jurisdiction." Id. (emphasis added). Importantly, the government does not contend that Bruffy intended to live at the Belle Haven apartment. When Bruffy left

the Belle Haven apartment, he took all of his possessions with him. There was no address to which he had a legal right to return. And all the while, the stipulated facts show that "with respect to the defendant's future plans, [Bruffy's roommate] felt that everything revolved around Maryland. Defendant tried to find work with someone he used to work for in Maryland, and spoke generally about living in Maryland and Pennsylvania, where his son and sister lived." J.A. 100. Bruffy did not intend to return to Belle Haven. Whether under the DOJ guidelines' 30-day theory or its intent-based theory, Bruffy cannot be convicted of the instant SORNA offense.

## II.

Even if I were to conclude that the DOJ regulations are not persuasive, I would find that under the plain language of the statute, Bruffy could not be convicted for the instant SORNA violation. First, as already noted, the 23-day period, even if considered to be unbroken by Bruffy's stay in Maryland, does not rise to the 30-day period suggested by the DOJ guidelines to constitute "habitually lives," and so it provides some evidence that Bruffy, under a plain-meaning theory, did not "habitually live[]" in Alexandria, Virginia. See id. at 38,062. Second, as discussed above, Bruffy did not intend to return to the Belle Haven apartment. A lack of intent to return to a location tends

24

to show one does not habitually live in that location.  Third, the circumstances surrounding his stay in the apartment likewise demonstrate that he did not habitually live there as a matter of law.

For most people, breaks in sleeping arrangements -- like Bruffy's stay at his uncle's residence -- would be unremarkable. But the backdrop for Bruffy is a situation of instability.  The undisputed facts show that Bruffy spent most of the nights in that date range at the Belle Haven apartment, where he would shower, eat his meals (which he paid for and prepared), and carry his belongings (including a blanket and a pillow) to and from his car daily.  He didn't have a key to the apartment; he didn't receive calls there; and he informed the residents of his return to the apartment each day so that they could let him into the apartment.  Bruffy obtained advance permission to stay at the Alexandria apartment, although it was understood that this was "a week-by-week situation" because Bruffy intended to rent his own residence in Maryland as soon as he got a job.

The key to the plain-language analysis is the word "habitually."  There is nothing habitual about Bruffy's living situation.  It is true that one of the occupants believed Bruffy could stay "a couple of weeks until [he] became situated."  Id. While a stay of a couple of weeks might rise to the level of "resides" and "habitually lives," under the plain meaning

definition (though likely not under DOJ's guidelines), this was clearly not such a case. Bruffy had called in advance to determine whether he could stay at the apartment, but no time frame was discussed for how long he could stay. It appears that he knew he could be refused entry at the Alexandria apartment any day. Bruffy knew that his stay was not contingent solely on whether he could find a job and an apartment of his own, but also upon the daily consent of the Alexandria apartment tenants. A situation so unstable cannot be termed habitual.

III.

As the majority notes, the federal case that comes the closest to the present facts is United States v. Voice, 622 F.3d 870, 873 (8th Cir. 2010), in which a sex offender registered at a halfway house in Sioux Falls, South Dakota, left Sioux Falls, and relocated to Fort Thompson, South Dakota. While the court refused to address "whether some travelers are so transient that a jury could not reasonably find a change of residence during extended travels," the court found that the evidence presented to the jury was sufficient to convict Voice. Id. at 874.

While the facts of Voice are similar to the present case, they are distinguishable. After moving to Fort Thompson, Voice first stayed for ten days at a friend's house, where he would receive mail, eat dinner, and shower; Voice then slept on a

26

cement slab near an abandoned comfort station in Fort Thompson, where he kept his belongings. Id. at 873-74. Voice habitually lived in the Fort Thompson area for two months -- well beyond the 30-day DOJ guidelines -- without updating his registration to show that he had left the Sioux Falls area. Most importantly, Bruffy updated his registration to note he would be transient when he left Florida. Furthermore, Bruffy spent some nights in Alexandria but other nights in Maryland over a 23-day period, then he spent a few nights in his car in the metropolitan D.C. area. Another telling indicator is that Voice kept his possessions in the comfort station -- a fixed location to which he returned nightly to sleep -- whereas Bruffy kept his in his car.

More on point are a number of state court cases that have found insufficient evidence to convict transient sex offenders under state analogues to SORNA. In Jeandell v. State, 910 A.2d 1141 (Md. 2006), the Maryland Court of Appeals rejected the lower court's interpretation of "residence," which the district court found to mean "living location." Id. at 1144. The court found that the defendant, a homeless man, who was "staying wherever he could," could not be convicted under the state's sex-offender registration statute. Id. at 1144-45. Particularly relevant is Twine v. State, 910 A.2d 1132 (Md. 2006), which also vacated a conviction of a homeless man,

27

stating that "residence" only exists if the registrant "has a fixed location at which the registrant is living, and to which the registrant intends to return upon leaving it." Id. at 1140; see also Santos v. State, 668 S.E.2d 676, 679 (Ga. 2008) (sex offender registration statute unconstitutionally vague as applied to homeless offender because statute requires a street or route address). During the disputed dates, Bruffy was "staying wherever he could," Jeandell, 910 A.2d at 1144-45, and he did not have a "fixed location at which he was living and to which he intended to return upon leaving it," Twine, 910 A.2d at 1140.

## IV.

The majority is correct about Bruffy's actions in one respect. He certainly could have done more. He could have changed his registration to more accurately reflect the geographic area in which he spent the majority of the time. But even though his actions did not constitute best practices, Bruffy complied with SORNA because his duty to update his registration was never triggered. What's left is the conclusion that Bruffy's only crime was being a homeless sex offender.

Whether analyzed under the DOJ guidelines or the plain-meaning of the statute, I would find that Bruffy did not habitually live in the Belle Haven region of Alexandria,

28

Virginia, from January 13, 2009, until February 5, 2009, and therefore I would also find that his duty to update his registration under SORNA was never triggered. I respectfully dissent.